**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CHARLES D. NYBERG, MARY J.
NYBERG and RED ROCK PARTNERS,

    Plaintiffs,

v.                                                Case No: 8:11-cv-399-T-30AEP

CRYO-CELL INTERNATIONAL, INC.,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon the Plaintiffs' Motion for Partial Summary Judgment with Incorporated Memorandum of Law, and Local Rule 3.01(j) Request for Oral Argument (Dkt. # 29), Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 45), Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. # 33), and Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. # 44). Upon review and consideration, it is the Court's conclusion that Plaintiffs' Motion should be granted in part and denied in part and Defendant's Motion should be denied.

### *Background*

The Plaintiffs Charles D. Nyberg and Mary J. Nyberg (collectively the "Nybergs") and Red Rock Partners ("Red Rock") filed this action on February 25, 2011, alleging that Cryo-Cell International, Inc. ("Cryo-Cell") failed to pay all amounts due to them under two agreements, a 1999 contract known as the State Revenue Sharing Partnership

Agreement for the State of Florida (the "Florida Agreement") and a 2001 contract known as the State Revenue Sharing Agreement for Texas (the "Texas Agreement") (collectively the "Revenue Sharing Agreements" or "Agreements").

Cryo-Cell is a company that engages in cellular processing and cryogenic storage, primarily focused on collecting and preserving umbilical cord blood stem cells. Cryo-Cell recently expanded its activities to include stem cells harvested from other sources, including menstrual stem cells, cord tissue and reproductive tissue. Cryo-Cell stores the specimens in commercially available cryogenic storage units at Cryo-Cell's headquarters in Oldsmar, Florida. Cryo-Cell has agreements with its clients whereby it collects the specimen, charges one fee for the processing and testing of the specimen and a separate fee for storage once the testing is complete.

Cryo-Cell offers its clients two types of payment options. The client may elect to pay an annual storage fee or a prepaid storage fee that covers storage for twenty-one (21) years. The prepaid plan provides a discount whereby the clients pay sixteen years' worth of storage fees. Cryo-Cell initially offered the prepaid fee for a lifetime storage plan; however, it later re-branded the service and limited storage to twenty-one years. Cryo-Cell deposits the lump sum payments into its operating account. It initially recorded the entire payment as revenue in the year it received the payment. However, Cryo-Cell later changed its accounting practices and allocated the lump sum payment on a *pro rata* basis over a 21 year period, thereby recording only $1/21^{st}$ of the prepayment as revenue.

Cryo-Cell entered into Revenue Sharing Agreements with Plaintiffs as a way to generate capital. The Florida Agreement entitles the Nybergs to a percentage of paid

storage fees for a maximum of 33,000 stored specimens originating from Florida. The Agreement required the Nybergs to pay $500,000 total to Cryo-Cell to enter into a partnership. However, the payment was completed in two parts: the Nybergs paid $275,000 to Cryo-Cell directly and Cryo-Cell collected the balance of $225,000 by retaining the Nybergs' quarterly entitlement payments until they equalled that amount. The Agreement calls the $225,000 portion of the payment a "deductible." The Nybergs satisfied the deductible in 2004, and thereafter received quarterly entitlement payments directly from Cryo-Cell. The Texas Agreement entitles Red Rock to a percentage of annual storage fees for a maximum of 33,000 stored specimens originating from Texas in exchange for a one time fee. The Nybergs are partners in Red Rock and Charles Nyberg is one of the signatories on the Texas Agreement. The Nybergs and Red Rock are both located in Arizona. The Plaintiffs claim that Cryo-Cell has not paid all of the entitlements due to them under the Agreements because it excludes storage fees from certain specimen types in its calculation of the entitlements, and it pays entitlements derived from the prepaid plans on a *pro rata* basis instead of a lump sum basis.

## *Discussion*

### I. Standard for Motion for Summary Judgment

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of

some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id*. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir.1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983).

**II. Choice of Law**

The Agreements do not contain a choice of law provision. Since this is a diversity action, the Court is required to apply the substantive law of the forum state including its conflict-of-laws rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995). When resolving conflict-of-laws issues in contract actions, the Florida Supreme

Court adheres to the traditional rule of *lex loci contractus. Fioretti*, 53 F.3d at 1235 (citing *Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974)). "The doctrine of *lex loci contractus* directs that, in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made, i.e., where the last act necessary to complete the contract is done." *Id.*

In the case of a written contract, where one contracting party signs the contract and the other party accepts and signs the contract, a binding contract results. *D.L. Peoples Group, Inc. v. Hawley*, 804 So. 2d 561, 563 (Fla. 1st DCA 2002). Therefore, the last act necessary for a written contract is the last signature on the contract. *Id.*; s*ee also Goodman*, 305 So.2d 753 (holding that contract signed in New York by promisor from Florida, and partially performed in Florida, was governed by New York law because it was executed in New York); *Jemco, Inc. v. United Parcel Service*, Inc., 400 So. 2d 499, 500 (Fla. 3d DCA 1981) (holding Connecticut law applied where contract negotiations took place in New York and Texas, agreement was signed by one party in Texas, forwarded to the other party's headquarters in Connecticut and the signing by the last party was performed in Connecticut). However, where the "laws of the competing states are substantially similar, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." *Fioretti*, 53 F.3d at 1234.

### III. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs allege that there are three issues that are not in dispute and ripe for summary judgment based on the plain language of the Agreements: (1) Cryo-Cell must

5

include all of the types of specimens it stores when it calculates the Plaintiffs' entitlements; (2) Cryo-Cell must include all of its clients' fees, whether prepaid or paid annually, when it calculates Plaintiffs' entitlements; and (3) Cryo-Cell must pay the entitlement derived from the prepaid plans in one lump sum as they are received by Cryo-Cell.

Cryo-Cell does not dispute that it has to calculate the entitlements based on storage of every type of specimen and on every type of storage fee, whether paid annually or prepaid. However, Cryo-Cell notes that the plain language in the Agreements limits the entitlements to fees derived from a maximum of 33,000 specimens and originating from Florida or Texas, as indicated in the Agreements. These limitations appear on the face of the Agreements, and Plaintiffs do not dispute them. Therefore the Court concludes that the term "specimen" as used in the Revenue Sharing Agreements include all specimen types stored by Cryo-Cell. Further, the Court concludes that any reference to "storage fees" in the Agreements refer to storage fees that are paid annually or prepaid.

The remaining issue in Plaintiff's Motion is Cryo-Cell's method of paying entitlements derived from the prepaid plans. The language in the Florida Agreement states that "[b]uyer's entitlement is for 25% of the $37.50[1] storage fee for a total of $8.75 per paid for specimen." It further states that "[Cryo-Cell] shall pay all storage entitlements ($8.75 per specimen) quarterly to the partner or designee." Red Rock's Agreement states that the partner "will receive their entitlement within thirty days (30

---

[1] The parties agree that the annual storage fee at the time of the contract was $50.

6

days) following the end of the quarter in which CRYO-CELL received the revenues." However, it specifically references "annual storage fees collected by [Cryo-Cell]" when discussing the calculation for the entitlement. The Agreements do not specifically reference any prepaid plans. Charles Nyberg admits that at the time he entered into the Agreements, both individually and on behalf of Red Rock, he was not aware that Cryo-Cell offered its clients prepaid plans.

      The language in the Florida Agreement presents a latent ambiguity under Florida and Arizona law. "A latent ambiguity... arises where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Mac-Gray Services, Inc. v. Savannah Associates of Sarasota, LLC*, 915 So. 2d 657, 659 (Fla. 2d DCA 2005). *Accord Hamada v. Valley Nat. Bank*, 27 Ariz. App. 433, 435, 555 P.2d 1121, 1123 (Ariz. Ct. App. 1976). A latent ambiguity is brought to light when extraneous circumstances reveal "an insufficiency in the contract not apparent from the face of the document." *Mac-Gray Services, Inc.*, 915 So. 2d at 659. The Florida Agreement's specific reference to "$8.75 per specimen" presents a latent ambiguity. On its face it clearly provides that the Nybergs will receive $8.75 per specimen stored on a quarterly basis. However, the language requires interpretation in light of the fact that the $8.75 figure is based on the $50 annual fee effective at the time of the contract, that the annual fee has increased since 1999, and that some clients prepaid twenty-one years of annual fees in a lump sum.

The Court cannot conclude from the face of the Florida Agreement whether the contract contemplated paying entitlements derived from the prepaid plans as they are received or *pro rata* as they are recognized in Cryo-Cell's accounting records. Further, the depositions and affidavits before the Court do not resolve this dispute. Therefore, there exists a dispute as to material fact regarding whether the language in the Florida Agreement determines the method by which Cryo-Cell has to pay the entitlements derived from the prepaid plans. *See id.* at 659-60 ("[w]hen an agreement contains a latent ambiguity ... the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment."); *accord Hamada*, 555 P.2d at 1123 ("[t]he intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on motion for summary judgment".)

However, the Texas Agreement is much more specific; the entitlements are to be paid in the quarter in which Cryo-Cell "received the revenues." Cryo-Cell's Motion focuses on the word "revenue" and argues that since it does not recognize the entire prepayment "as revenue" in the year it is received, it should not have to pay entitlements on the entire amount either. However, Cryo-Cell admits that the Texas Agreement entitlements derive from both the prepaid and annually paid storage fees. The other remaining operative terms in the contract, "received" and "revenue," are not latent ambiguities. Therefore the only interpretation under the contract is that Cryo-Cell must pay the entitlements under the Texas Agreement on the fees from the prepaid plans in the same way they are received; in a lump sum, upfront basis. The Plaintiffs' Motion for Partial Summary Judgment is therefore granted in part and denied in part.

IV.    **Defendant's Motion for Summary Judgment**

Cryo-Cell moves for summary judgment on the issue of statute of limitations. It argues that the statute of limitations bars the Plaintiffs' claims for breach of contract in the First Amended Complaint because they accrued more than five years before the filing of this action. Cryo-Cell applies Florida's statute of limitations; however, there is a dispute as to whether Florida or Arizona law applies in this case.

Under Florida law, a cause of action for breach of contract accrues and the limitations period commences at the time of the breach. § 95.11(2)(b), Fla. Stat. *See also* § 95.031(1) ("A cause of action accrues when the last element constituting the cause of action occurs"); *Clark v. Estate of Elrod*, 61 So. 3d 416, 418 (Fla. 2d DCA 2011), reh'g denied (May 31, 2011). A party asserting a breach of contract claim must sue within five years after the claim accrues. § 95.11(2)(b), Fla. Stat. Under Arizona law, with respect to breach of contract, generally the statute of limitations runs from the time of breach. *See, e.g., Angus Med. Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 162; 840 P.2d 1024, 1027 (Ariz. Ct. App. 1992). However, a party asserting a breach of contract claim must sue within six years after the claim accrues. § 12-548, Ariz. Rev. Stat.

The evidence before the Court does not indicate whether the Agreements were last signed in Florida where Cryo-Cell is located, or in Arizona where the Nybergs reside and where Red Rock is located. The evidence only shows that a corporate representative of Cryo-Cell drafted the documents, and that the parties may have completed the signatures over fax. Further, there is evidence that suggests that Cryo-Cell's practice was to sign the contract first, and then send the contract to the Nybergs for execution. *See* Dkt. #30, 74-

75; Dkt. #36-8 (copy of fax from Cryo-Cell to Charles Nyberg enclosing a proposed addendum to the Florida Agreement signed only by Cryo-Cell.)

Defendant's reliance on *Royal Surplus Lines Ins. Co. v. Delta Health Group, Inc.,* 2006 WL 167565 (N.D. Fla. 2006) aff'd, 243 Fed. Appx. 551 (11th Cir. 2007) for its conclusion that Florida law governs this case is unpersuasive. *Royal Surplus* is distinguishable from this case because the contract at issue was a surplus line insurance policy. The court held that the last act necessary to complete the contract was the delivery of the insurance policy to the insured. *Id.* However contracts for insurance require issuance and delivery of the policy to the insured to complete the transaction. *See Prudential Ins. Co. of Am. v. Latham,* 207 So. 2d 733, 735 (Fla. 3d DCA 1968) ("The facts of issuance of the policy by the company, delivery to the agent, and acceptance by the insured combine to establish the existence of a valid contract of insurance.").

There exists a dispute as to material fact as to "where the last act necessary to complete the contract" occurred in this case and the Court cannot determine whether to apply the Florida or Arizona statute of limitations based on the record before it. Therefore, the Court denies the Defendant's Motion for Summary Judgement without prejudice to the Defendant to raise the statute of limitations defense in further proceedings.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiffs' Motion for Partial Summary Judgment (Dkt. #29) is granted in part and denied in part.

2. Plaintiffs' Request for Oral Argument is denied.

3. Defendant's Motion for Summary Judgment (Dkt. #33) is denied without prejudice.

**DONE** and **ORDERED** in Tampa, Florida, this 25th day of September, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2011\11-cv-399-msj 29 and 33.docx